## PHELAN v. O'BRIEN.

*(District Court, E. D. Missouri.   May 28, 1882.)*

BANKRUPTCY—LIMITATIONS OF ACTIONS.—REV. ST. § 5057.

Where a deed of trust upon real estate, executed by A. to secure certain promissory notes, was foreclosed by B., who, as assignee in bankruptcy of the estate of C., held one of said notes, and all parties in interest were present or represented at the sale under said deed, and B., with the sanction of the court by which he had been appointed, became the purchaser for the benefit of C.'s estate, and, with the knowledge of A., paid the holders of the other notes their *pro rata* of the purchase money, *held*, that proceedings instituted by A. against B., more than two years after the date of said sale, to set it aside, were barred by the limitations of the bankrupt act.

In Equity.

This was a suit to quiet the title to an undivided interest in certain real estate bought by complainant on the twentieth of September, 1878, for the benefit of the estate of the Central Savings Bank, bankrupt, at a sale under a deed of trust executed by defendant, Elizabeth A. O'Brien. The bill prayed, among other things, for an injunction to restrain defendant from prosecuting a suit to set aside said sale, which she had instituted in the month of April, 1881, in the circuit court of Jackson county, Missouri. A preliminary injunction to restrain defendant from prosecuting said action was granted March 17, 1881. On May 3d of the same year said Elizabeth A. O'Brien filed a cross-bill against complainant, praying that said sale to him might be set aside, and that he be decreed to account to her for all proceeds of sales made by him of said property. The complainant in his answer to said cross-bill, pleaded, among other things, the following section of the Revised Statutes of the United States, to-wit:

"Sec. 5057. No suit, either at law or equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. *  *  *"

The other material facts are sufficiently stated in the opinion of the court.

*Walker & Walker*, for complainant.

*Donovan & Conroy*, for defendant.

TREAT, D. J.   It is not proposed to enter upon any elaborate analysis of the evidence, authorities cited, or of the rules of law invoked; for, whatever decision this court may make, will, as intimated, be reviewed by an appellate tribunal. The essential facts are that Phe-

lan was assignee in bankruptcy of the Central Savings Bank, among whose assets was a note executed by the defendant, together with two other notes held by other persons, all secured by a deed of trust. Those notes were past due. After waiting for a long time to have the same paid, he caused the deed to be foreclosed, and he became the purchaser at the sale for the benefit of the bankrupt estate, with the sanction of this court. All the parties in interest were present at the sale, either in person or by their legal representatives. The plaintiff, as assignee in bankruptcy, paid to the holders of the other notes their *pro rata* of the purchase money. Thereupon the assignee has proceeded from time to time to sell the property thus acquired, with the consent of other parties in interest, he having only an undivided interest, and has, under the sanction of the court, made out of the proceeds of such sales dividends to the creditors of the bankrupt estate.

More than two years elapsed from the date of the foreclosure sale before the defendant instituted suit looking to the avoidance of said foreclosure. She knew that the foreclosure sale was to be made at the time when it was made; she knew that it had been made, and was charged with notice of the distribution of the proceeds thereof towards the satisfaction of her obligations.

The primary question is whether her suit is within the limitation of the bankrupt act. After an examination of the authorities this court must hold that such limitations obtain. This case shows the importance of upholding such a rule. An assignee in bankruptcy, in the administration of his trust, proceeded to enforce the collection of assets transferred to him; and in doing so it became necessary for him, in order to disentangle interests, to become the purchaser of the entangled estate, so that in managing the same he might secure for the bankrupt estate the largest sum practicable. This he did under the direction and with the sanction of the court. At the time he became such purchaser all owners of the individual interests were present or represented, knowing full well what was the propery being sold and its value. The value was prospective or speculative. Bids were made by parties in interest, and the plaintiff became the purchaser for the bankrupt estate. At the date of that sale full value as then understood was obtained. From a variety of circumstances since occurring the property has greatly enhanced in value. The assignee, it seems, went beyond his legal duty, without assent of the court, in consenting that defendant might redeem. She did not redeem nor offer to redeem within two years. If there had been no advance in

values it is not probable that she would have brought suit to set aside the sale. She had extreme indulgence to redeem, of which she did not avail herself; and such indulgence by the plaintiff was not even authorized by the court. She chose to lie by waiting the chances of the rise or fall in values, and having thus waited until the bar of limitations arose she cannot now be heard. More potently should the rule be enforced in this case, because she knew that in the mean time the bankrupt estate was in the course of administration, sales being made and dividends declared.

The case is not an unusual one. It often happens that a mortgage or deed of trust is given to secure payments of a sum due, and that the property pledged does not at the sale bring the sum for which it is pledged. Unless the property thereafter enhances in value, no complaint is made. Suppose a stranger had become the purchaser at the foreclosure sale, what pretence could there be for setting the same aside after he had paid over the purchase money to the several beneficiaries entitled thereto? It might be that he made a bad purchase, and then no complaint would appear. On the other hand, as in this case, the purchase turned out to be a good one, and therefore is the rule of law to depend on the outcome of a bargain—if bad, the purchaser to be bound; but if good, to lose the benefit of his investment?

There are many considerations urged which would have great force if the case were other than that presented, such as the vagueness of the advertisement of sale, etc. It must suffice that the bar of limitations prevails.

The cross-bill is dismissed, and a decree as per the original bill will be entered.

After delivering the foregoing opinion, Judge TREAT proceeded verbally to state his views on the other questions presented outside of the statute of limitations. He said "the equities were strongly against Mrs. O'Brien; that while the notice of sale was vague, yet it followed the description in the deed, and she, being represented at the sale, could not now, after this lapse of time, be heard to complain. She knew what property was being sold. She was granted great indulgence before and after the sale under the deed of trust, but did not avail herself thereof. She waited until after, by the active exertions of Mr. Phelan, the assignee, and the owners of the other interests, the property became exceedingly valuable, and then, for the first time, sought to set aside the sale, after she had allowed the assignee to sell portions of the property, and to distribute the proceeds of the same among the creditors of the Central Savings Bank. She claims that the property was not sold under the deed of trust in lots and blocks. It is true, the property

had been subdivided, but the subdivision was only on paper. The interest sold was a one-fifth interest, and the entire property was burdened with taxes to an amount exceeding $15,000. No intelligent person would want to buy an undivided one-fifth interest in a lot forming part of a large tract burdened with so great an amount of taxes. Mrs. O'Brien has no right at this late day to complain."